

DEC 03 2019

Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM CURTIS HILL JR.,<br><br>Defendant. | CR 19-109-BLG-SPW-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENT |
|---|---|

Before the Court is Defendant William Curtis Hill Jr.'s Motion to Suppress Defendant's Statement. (Doc. 29.) The Government has filed a response (Doc. 39), and this motion is ripe for a ruling.

I. **Background**

On February 22, 2019, law enforcement searched Hill's residence and discovered over thirty grams of methamphetamine. (Docs. 30 at 1–2, 39 at 2.) The case was referred to FBI Task Force Officer Moffet (TFO Moffet) for further investigation. (Doc. 39 at 2.) Hill was on probation at the time and was required to report regularly to his probation officer, Kelvin Harrell (PO Harrell). (Docs. 30 at 1–2, 39 at 2.) In early April, Hill received a text from PO Harrell ordering him to report to the probation office on the afternoon of April 17, 2019. (Doc. 30 at 2.)

1

When Hill met PO Harrell, PO Harrell escorted him to a room where TFO Moffet and TFO Michael Robinson were waiting to interview him.

TFO Moffet briefly explained the officers' purpose for meeting with Hill, began recording the interview, and asked Hill basic identification questions. (Doc. 30-A at 0:20-1:15.) TFO Moffet then read Hill his *Miranda* rights using the FBI's Advice of Rights form (Doc. 30-B). They had the following exchange:

> TFO Moffet: Alright, I already explained a little bit to you about why we're here. I'm gonna—um—read you your rights now so that you can understand those okay?
>
> Hill: Okay.
>
> TFO Moffet (reading from the FBI's Advice of Rights form): Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer any questions now without a lawyer present, you have the right to stop answering at any time.
>
> Hill: Yeah.
>
> TFO Moffet: You understand all that?
>
> Hill: Yeah.
>
> TFO Moffet: Okay. Why don't you sign right here saying that you understand that—everything I just read to you?
>
> Hill: (signs under the "CONSENT" section of the FBI's Advice of Rights form).

2

> Hill: Okay.
>
> TFO Moffet: So, when was this, back in February?
>
> Hill: Yeah.
>
> TFO Moffet: February 22nd?
>
> Hill: Yep.
>
> TFO Moffet: Take me through that day.
>
> Hill: Okay, I—we were getting ready to leave the house, I walked out of the house to get in the car . . . .

(Doc. 30-A at 1:08-2:00.) Hill proceeded to detail the events surrounding the discovery of methamphetamine in his residence on February 22, 2019, after which TFO Moffet concluded the interview. (*Id.* at 2:00-14:08.) The Government later charged Hill with conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine. (Doc. 2.)

## II. Discussion

Hill contends TFO Moffet did not fully inform him of his *Miranda* rights because TFO Moffet did not read aloud the portion of the FBI Advice of Rights form under "CONSENT" that states, "At this time, I am willing to answer questions without a lawyer present." *See* (Doc. 30-B.) He further argues that because TFO Moffet never received Hill's verbal consent to waive his *Miranda* rights, the statements Hill made during the interview must be suppressed. (Doc. 30 at 11.) Hill spends most of his brief arguing he was in custody and law enforcement interrogated

3

him—two elements which, when met, require law enforcement to read a suspect his *Miranda* rights. (Doc. 30 at 3–10.)

The Government concedes both elements were met and law enforcement needed to advise Hill his *Miranda* rights before questioning him. However, the Government argues TFO Moffet properly advised Hill of his *Miranda* rights and Hill knowingly waived them. (Doc. 39 at 4–7.)

*Miranda* requires law enforcement to inform an in-custody suspect of the following rights before questioning him: "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473–74. *Miranda* requires a defendant to understand his rights, but when and how he chooses to exercise them is his decision. *United States v. Lares-Valdez*, 939 F.2d 688, 690 (9th Cir. 1991).

Because the Government concedes law enforcement needed to inform Hill of his *Miranda* rights, the only issues are: (1) whether TFO Moffet properly read Hill

4

his *Miranda* rights, and (2) whether Hill knowingly, intelligently, and voluntarily waived them.

*1. TFO Moffet properly read Hill his* Miranda *rights.*

To meet *Miranda*'s requirements, no "precise formulation of the warnings given" or "talismanic incantation" are necessary. *California v. Prysock*, 453 U.S. 355, 359 (1981). "Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by Miranda." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (internal quotations omitted).

Those rights, delineated above, do not contain a requirement that law enforcement receive a suspect's affirmative verbal consent to be interviewed after reading him his *Miranda* rights and before questioning him. Likewise, there is no requirement to inform a suspect of a right to stop questioning after it has begun. *Lares-Valdez*, 939 F.2d at 690. Rather, after law enforcement reads a suspect his *Miranda* rights, how the suspect chooses to exercise them is his prerogative. *Id.*

When TFO Moffet read Hill his rights in the FBI Advice of Rights form, he met the requirements under *Miranda*; he did not need to ask Hill if he waived his *Miranda* rights and wished to answer questions. TFO Moffet clearly informed Hill he had the right to remain silent, that anything he said could be used against him in

5

a court of law, that he had the right to the presence of an attorney, and that if he could not afford an attorney one would be appointed for him prior to any questioning if he so desired. *See Miranda*, 384 U.S. at 444 (1966). Nothing more was needed. Hill's concern—whether he consented to "answer questions without a lawyer present"—instead weighs on whether he knowingly, intelligently, and voluntarily waived his rights.

2. *Hill knowingly, intelligently, and voluntarily waived his* Miranda *rights.*

There is a presumption against waiver of one's *Miranda* rights, which the Government bears the burden of overcoming by a preponderance of the evidence. *United States v. Crews*, 502 F.3d 1130, 1139–40 (9th Cir. 2007). In determining whether a defendant knowingly, intelligently, and voluntarily waived his rights, courts consider the totality of the circumstances. *Unites States v. Price*, 921 F.3d 777, 791–92 (9th Cir. 2019). That consideration involves the following factors:

> (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system.

*Id.* (quoting *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007)). A written waiver in particular is strong evidence that the waiver is valid. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *Derrick v. Peterson*, 924 F.2d 813, 824 (9th Cir. 1990), *overruled on other grounds by United States v. Preston*, 751 F.3d 1008 (9th

6

Cir. 2014); *United States v. Bernard S.*, 795 F.2d 749, 753 n. 4 (9th Cir. 1986). Nevertheless, absent a written or explicit waiver, the Government may still show the defendant knowingly, intelligently, and voluntarily waived his rights under the circumstances. *See Price*, 921 F.3d at 792.

Hill understood his rights, but it is arguable whether he believed his signature on the FBI Advice of Rights form to be a waiver. After reading Hill his rights, TFO Moffet asked whether Hill understood them, and Hill responded affirmatively. TFO Moffet then said, "Why don't you sign right here saying that you understand that—everything I just read to you?" He was referring to the signature line under "CONSENT." That section of the form contains the following language: "At this time, I am willing to answer questions without a lawyer present." Given the short duration between TFO Moffet handing the form to Hill and Hill signing it, it is unlikely Hill took the time to read the form or understood his signature to be a written waiver of his rights. There is a reasonable argument Hill believed his signature indicated only that he understood his rights—just as TFO Moffet told him it would.

Nevertheless, the remaining circumstances indicate Hill knowingly, intelligently, and voluntarily waived his rights. The interview recording speaks for itself. There is no indication Hill was lacking in mental capacity or acting under duress. Hill freely conversed with the officers and provided background information before TFO Moffet read him his rights. Although Hill may have been nervous, the

7

conversation had an agreeable tone. Hill affirmed he understood his rights multiple times and did not hesitate to sign a document stating he understood them (even if he may not have believed the document was also a written waiver). He did not make any statements or ask any questions about his rights indicating he did not understand them. Neither did he attempt to exercise them; instead, after TFO Moffet began asking him questions, Hill readily volunteered and provided a narrative of the events leading up to the search of his residence. The recording indicates he was also appropriately tracking and engaging in the conversation. Finally, he acknowledged his maturity and experience with the criminal justice system when he stated, "I'm 38-years-old and sick of doing time." (Doc. 30-A at 6:08.) Hill knew what his rights were and knew he could stop the questioning at any time. Accordingly, even if Hill did not expressly waive his *Miranda* rights, the circumstances indicate he impliedly did so—knowingly, intelligently, and voluntarily.

### III. Conclusion

TFO Moffet properly read and advised Hill of his *Miranda* rights. TFO Moffet was not required to explicitly ask whether Hill consented to answer questions without a lawyer present. Instead, the circumstances indicate Hill knowingly, intelligently, and voluntarily waived his *Miranda* rights and agreed to answer the questions the officers asked him. Accordingly,

**IT IS ORDERED** that the Defendant William Curtis Hill Jr.'s Motion to Suppress Defendant's Statements (Doc. 29) is **DENIED**.

DATED this 2nd day of December, 2019.

_Susan P. Watters_
SUSAN P. WATTERS
United States District Judge